IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SONOMA FOODS, INC.,<br><br>    Plaintiff,<br><br>  v.<br><br>SONOMA CHEESE FACTORY, LLC, et al.,<br><br>    Defendants.<br><br>AND RELATED COUNTERCLAIMS<br>_____ / | No. C 07-00554 JSW<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S SPECIAL MOTION TO STRIKE AND PLAINTIFF'S MOTION TO DISMISS** |

     Now before the Court are plaintiff and counter-defendant Sonoma Foods, Inc.'s ("Sonoma Foods") special motion to strike pursuant to California Code of Civil Procedure § 425.16 and motion to dismiss the counter-claims filed by defendant and counter claimants Sonoma Cheese Factory, LLC ("Sonoma Cheese Factory") and counter claimant L. Peter Viviani ("Peter Viviani") (collectively, ("Counter-claimants").[1]  Having considered the parties' arguments, relevant legal authority, and having had the benefit of oral argument, the Court hereby grants in part and denies in part the special motion to strike and the motion to dismiss the counter-claims.

---

[1] The Court DENIES Counter claimant's administrative motion seeking to have the motion to dismiss addressed prior to the special motion to strike and DENIES Sonoma Foods' request for judicial notice because the Court did not need to consider such documents in ruling on the motion to dismiss.

**BACKGROUND**

Sonoma Foods filed this trademark infringement action against Sonoma Cheese Factory. Sonoma Cheese Factory and Peter Viviani, Sonoma Cheese Factory's owner, then asserted counter-claims against Sonoma Foods.

The following facts are taken from the counter-complaint: Peter Viviani's father started a family business under the name Sonoma Cheese Factory in 1931 through which they sold "Sonoma Jack" brand cheese products. (Counter-compl., ¶ 8.) Peter Viviani started working for the family business in 1946 and Peter Viviani's son, C. David Viviani ("David Viviani") joined the business in 1969. (*Id.*) The family business includes a local storefront on 2 Sprain Street. (*Id.*)

In 1959, Peter Viviani formed Galaxy Products, Inc. as a successor-in-interest to the original Sonoma Cheese Factory and added manufacturing and wholesale distribution to the family business. (*Id.*, ¶ 9.) In 1991, Galaxy Products, Inc. was renamed Sonoma Foods, Inc. (*Id.*) Peter Viviani served as the Vice President, Chief Financial Officer and Secretary of Sonoma Foods and owned 51 percent of the corporation's stock, while David Viviani served as President and owned the remaining 49 percent of the stock. (*Id.*)

In 2001, Peter and David Viviani decided to divide the family business. They agreed that Peter Viviani would own and operate the retail operations and that David Viviani would own and operate the manufacturing and wholesale distribution operations. (*Id.*, ¶ 10.) Pursuant to this agreement, the directors of Sonoma Foods held a special meeting on December 31, 2001 to restructure the business. At this meeting, Sonoma Foods formed Sonoma Cheese Factory to own and run the retail operations. (*Id.*) Sonoma Foods was to manufacture cheese products and Sonoma Cheese Factory was to market, advertise and sell the cheese products under its applicable trademarks and trade names. Accordingly, all of the assets and liabilities relating to Sonoma Foods' ownership and operation of the retail operations, including trademarks, were supposed to be transferred to Sonoma Cheese Factory. (*Id.*) In exchange, Peter Viviani's transferred his shares of Sonoma Foods to David Viviani. (*Id.*) The corporate officers were

directed to prepare all the documents needed to execute this agreed-upon restructuring of the family business.  (*Id*.)

The trademarks that Counter-claimants allege should have been transferred to Sonoma Cheese Factory pursuant to the agreement reached on December 31, 2001 ("December 2001 Agreement") include: (1) *Sonoma Cheese Factory* & design (Reg. No. 1111024) in class 29 for use in association with cheese; (2) *Sonoma Cheese Factory* (Reg. No. 1386303), a service mark in class 42 for restaurant services; (3) *Sonoma Deli* (Reg. No. 1748715) in class 30 for sandwiches; (4) *Sonoma* (Reg. No. 1,334,539) in class 29 for use in association with cheese; (5) *Sonoma Blue* (Reg. No. 2610926) in class 29 for use in association with cheese; (6) *Sonoma Jack* & design (Reg. No. 1099709) in class 29 for use in association with cheese; and (7) "*Sonoma Jack* (stylized)" (Reg. No. 1099707) in class 29 for use in association with cheese (collectively, ("Retail Trademarks").  (*Id*., ¶ 12.)  In violation of the December 2001 Agreement, Sonoma Foods failed to transfer these Retail Trademarks to Sonoma Cheese Factory.  (*Id*., ¶ 13.)

Sonoma Foods also registered three additional trademarks that are derived from the activities of, and are necessary to, the operation of Sonoma Cheese Factory, and thus, should have been registered for the benefit of Sonoma Cheese Factory.  (*Id*., ¶ 14.)

Counter-claimants assert the following counter-claims against Sonoma Foods based on its alleged failure to transfer the Retail Trademarks: (1) breach of contract; (2) negligence; (3) common law fraud; (4) constructive fraud under California Civil Code § 1573; (5) breach of fiduciary duty; (6) rescission; and (7) financial elder abuse.

Counter-claimants also bring a claim for false or fraudulent registration of trademarks.  Under this claim, they allege that pursuant to the December 2001 Agreement, Sonoma Cheese Factory was entitled to all trademarks relating to the retail operations and that Sonoma Foods filed for and received such trademarks.  (*Id*., ¶ 39.)  Sonoma Foods obtained registered trademarks from the United States Patent and Trademark Office ("PTO") by false or fraudulent declaration or representation.  (*Id*., ¶ 40.)  Counter-claimants also allege that the above conduct constitutes unfair trade practices and unfair competition pursuant to 15 U.S.C. § 1125(a).

3

1    Incorporating the above allegations, Counter-claimants bring a claim for unfair
2 competition under California Business and Professions Code § 17200 ("Section 17200).
3 (Counter-compl., ¶¶ 45, 46.)  Counter-claimants also bring a claim entitled common law injury
4 to business reputation based on Sonoma Foods' alleged assertion of ownership of the Retail
5 Trademarks and its assertion that Sonoma Cheese Factory does not enjoy rights in the Retail
6 Trademarks.  (*Id*., ¶ 49.)  Similarly, Counter-claimants bring a claim entitled unjust enrichment,
7 alleging that Sonoma Foods would be unjustly enriched if the Court were to compel Sonoma
8 Cheese Factory to stop using the Retail Trademarks and pay to Sonoma Foods all its profits
9 derived from its sales under the Retail Trademarks.  (*Id*., ¶¶ 53, 54.)

10   Finally, Counter-claimants bring an action for declaratory relief.  Under this claim, they
11 allege that Sonoma Foods failed transfer all trademarks related and necessary to the retail
12 operations, including the Retail Trademarks, improperly filed for and registered trademarks
13 related and necessary to the retail operations, and is infringing Sonoma Cheese Factory's
14 trademarks, including the Retail Trademarks.  (*Id*., ¶ 61.)

15   Sonoma Foods now moves to strike these counter-claims pursuant to California Code of
16 Civil Procedure § 425.16 ("Section 425.16") and to dismiss them pursuant to Federal Rule of
17 Civil Procedure 12(b)(6) ("Rule 12(b)(6)").

18                    **ANALYSIS**
19 **A.    Legal Standard for Special Motion to Strike.**
20    California's anti-SLAPP ("Strategic Lawsuit Against Public Participation") statute
21 provides a mechanism for a defendant to strike civil actions brought primarily to chill the
22 exercise of free speech.  Cal. Code Civil Proc. § 425.16(b)(1); *see also Metabolife*
23 *International, Inc. v. Wornick*, 213 F. Supp. 2d 1220, 1221 (S.D. Cal. 2002).  The California
24 Legislature passed the statute and explicitly recognized "the public interest to encourage
25 continued participation in matters of public significance ... and [found] that this participation
26 should not be chilled through abuse of the judicial process." *Metabolife*, 213 F. Supp. 2d at
27 1221 (citations omitted).  Thus, to deter such chilling, a prevailing defendant on a special
28

4

motion to strike shall be entitled to recover his or her reasonable attorney's fees and costs. *Id.*, citing Cal. Code Civ. Proc. § 425.16(c).

Section 425.16 provides, in relevant part, that

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.
>
> As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a ... judicial proceeding, or any other official proceeding authorized by law....

Cal. Code Civ. Proc. §§ 425.16(b)(1); 425.16(e).

A special motion to strike a SLAPP suit involves a two-step analysis. First, the court must decide whether the defendant has made a threshold showing that the challenged cause of action is one "arising from" protected activity. *See, e.g., City of Cotati v. Cashman*, 29 Cal. 4th 69, 76 (2002). The defendant may meet this threshold burden by showing that the act which forms the basis for the plaintiff's cause of action was a written or oral statement made before a judicial proceeding. *See Church of Scientology of California v. Wollersheim*, 42 Cal. App. 4th 628, 646 (1996). Courts examine the "principal thrust or gravamen" of the claims at issue to determine whether they arise from protected activity. *Mann v. Quality Old Time Service, Inc.*, 120 Cal. App. 4th 90, 103 (2004). "Where a cause of action alleges both protected and unprotected activity, the cause of action will be subject to section 425.15 unless the protected activity is 'merely incidental' to the unprotected conduct." *Id.* (quoting *Scott v. Metabolife Int'l., Inc.*, 115 Cal. App. 4th 404, 419 (2004)).

If the defendant establishes a prima facie case that the claims arise from protected activity, the burden then shifts to the plaintiff to establish a probability that the plaintiff will prevail on the claim. *Wollersheim*, 42 Cal. App. 4th at 646; *see also Cotati*, 29 Cal. 4th at 76. In making its determination, the trial court is required to consider the pleadings and supporting

5

and opposing affidavits stating the facts upon which liability or defense is based.  *See* Cal. Code Civ. Proc. § 425.16(b).

**B.     Sonoma Foods' Motion to Strike.**

   **1.     Federal Claims Are Not Subject to Section 425.16.**

Although Section 425.16 "applies to state law claims brought in federal court, it does not apply to federal question claims in federal court because such application would frustrate substantive federal rights." *Bulletin Displays, LLC v. Regency Outdoor Adver., Inc.*, 448 F. Supp. 2d 1172, 1180 (C.D. Cal. 2006); *see also In re Bah*, 321 B.R. 41, 46 (9th Cir. BAP 2005); *Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 63 F. Supp. 2d 1127, 1130 (N.D. Cal. 1999).  Accordingly, the Court will not apply Sonoma Foods' special motion to strike to Counter-claimants' claims for false or fraudulent registration of trademarks or for unfair trade practices and unfair competition pursuant to 15 U.S.C. § 1125(a).

   **2.     Sonoma Foods' Threshold Burden of Demonstrating Challenged Cause of Actions Arise From Protected Activity.**

Sonoma Foods argues that all of the counter-claims "arise from" protected activity because they were filed in retaliation for Sonoma Foods' filing of this action.  (Mot. at 9.)  With respect to specific claims, Sonoma Foods argues that: (1) the tenth counter-claim for common law injury to business reputation is based on Sonoma Foods' attempts to protect its trademarks, including the filing of this lawsuit; (2) the eleventh counter-claim for unjust enrichment is also based on Sonoma Foods' lawsuit; and (3) the counter-claims for fraud and breach of contract are based on Sonoma Foods' alleged failure to assign them trademarks.[2]  (Mot. at 9-11.)

The constitutional right to petition includes the basic act of filing and is thus protected activity under Section 425.16.  *See Briggs v. Eden Council for Hope and Opportunity*, 19 Cal.4th 1106, 1115 (1999).  Nevertheless, the fact that Counter-claimants filed their counter-claims after Sonoma Foods initiated this lawsuit does not mean that the counter-claims "arise

---

[2] Sonoma Foods also argues that the seventh counter-claim for false or fraudulent registration of trademarks is premised on its petition to the PTO for trademark registrations. However, because the Section 425.16 does not apply to federal question claims brought in federal court, as discussed above, the Court will not address Sonoma Foods' motion as to this counter-claim.

6

from" protected activity. *Flores v. Emerich & Fike*, 416 F. Supp. 2d 885, 897 (E.D. Cal. 2006). "Nor does the fact '[t]hat a cause of action arguably may have been triggered by protected activity' necessarily mean that it arises from such activity." *Id*. (quoting *Cotati*, 29 Cal. 4th at 78). Rather, the critical point is whether the cause of action itself was *based on* an act in furtherance of the nonmoving party's right of petition or free speech. *Id*.; *see also Cotati*, 29 Cal. 4th at 78. In other words, the acts underlying the cause of action at issue "must *itself* have been an act in furtherance of the right of petition or free speech." *Cotati*, 29 Cal. 4th at 78 (emphasis in original). Therefore, even if Counter-claimants filed their counter-claims in response to Sonoma Foods' initiating this action, unless Sonoma Foods demonstrates that the actual acts underlying each claim at issue were acts taken by Sonoma Foods in furtherance of the right of petition or free speech, Sonoma Foods has not made the required threshold showing for its special motion to strike. The Court thus denies Sonoma Foods' motion as it relates to the entire counter-complaint generally. To the extent Sonoma Foods proffers arguments as to the underlying facts of specific counter-claims, the Court will address each argument in turn.

### a. Tenth and Eleventh Counter-claims: Common Law Injury to Business Reputation & Unjust Enrichment.

The facts underlying the tenth and eleventh counter-claims are premised on Sonoma Foods' filing of this lawsuit. Counter-claimants claim for "common law injury to business reputation" is based on Sonoma Foods' alleged assertion of ownership of the Retail Trademarks and its assertion that Sonoma Cheese Factory does not enjoy the rights in the Retail Trademarks. (Counter-compl., ¶ 49.) Although Counter-claimants do not allege how or when Sonoma Foods engaged in such alleged conduct, Sonoma Foods asserts trademark rights in its complaint in this action and accuses Sonoma Cheese Factory of infringing such rights. Under their claim for unjust enrichment, Counter-claimants allege that Sonoma Foods would be "unjustly enriched if the Court were to compel [Sonoma] Cheese Factory to stop using the Retail Trademarks" and pay to Sonoma Foods all its profits derived from its sales under the Retail Trademarks. (*Id*., ¶¶ 53, 54.) Counter-claimants are challenging the relief Sonoma

7

Foods is seeking in its infringement complaint. The tenth and eleventh counter-claims thus "arise from" protected activity. *See Wollersheim*, 42 Cal. App. 4th at 646.

Counter-claimants argue that an exception to the Anti-SLAPP provisions set forth in California Code of Civil Procedure § 425.17(c) is applicable to their counter-claims. Section 425.17(c) provides in pertinent part:

> Section 425.16 [the Anti-SLAPP provisions] do[ ] not apply to any cause of action brought against a person primarily engaged in the business of selling or leasing goods or services, including, but not limited to, insurance, securities, or financial instruments, arising from any statement or conduct by that person if both of the following conditions exist:
> (1) The statement or conduct consists of representations of fact about that person's or a business competitor's business operations, goods, or services, that is made for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, the person's goods or services, or the statement or conduct was made in the course of delivering the person's goods or services.
> (2) The intended audience is an actual or potential buyer or customer, or a person likely to repeat the statement to, or otherwise influence, an actual or potential buyer or customer ....

As discussed above, the tenth and eleventh counter-claims are premised on Sonoma Foods' filing of this lawsuit. The statements made in Sonoma Foods' complaint were not "made for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, the person's goods or services" or made in the course of delivering" Sonoma Foods' goods or services. *See* Cal. Code Civ. Proc. § 425.17(c)(1). Therefore, the Court finds that this exception is not applicable here, and therefore, Counter-claimants' tenth and eleventh counter-claims are subject to the Anti-SLAPP provisions.

**b.    Counter-claims for Fraud and Breach of Contract**

The counter-claims for fraud and breach of contract are based on Sonoma Foods' alleged failure to assign Counter-claimants the Retail Trademarks. They arise out of the alleged December 2001 Agreement and Sonoma Foods' alleged failure to act as promised, not on any protected activity. Accordingly, the Court finds that Sonoma Foods has not meet its threshold burden with respect to the counter-claims for fraud and breach of contract and thus denies the special motion to strike as to these claims.

8

### 2. Counter-claimants' Burden of Demonstrating a Probability of Prevailing on Merits.

Once Sonoma Foods has made the threshold showing, the burden shifts to Counter-claimants to establish a probability of prevailing at trial. *See Wollersheim*, 42 Cal. App. 4th at 646. Counter-claimants need not *prove* the challenged claims. "Rather, the court considers whether the plaintiff has made a prima facie showing of facts based on competent admissible evidence that would, if proved, support a judgment in the plaintiff's favor." *Mann*, 120 Cal. App. 4th at 105. A plaintiff need only establish the challenged cause of action has "minimal merit." *Navellier v. Sletten,* 29 Cal.4th 82, 94 (2002). Moreover, where "a plaintiff can show a probability of prevailing on *any part of its claim*, the cause of action is not meritless and will not be subject to the anti-SLAPP procedure. ... [O]nce a plaintiff shows a probability of prevailing on any part of its claim, the plaintiff *has established* that its cause of action has some merit and the entire cause of action stands." *Mann*, 120 Cal. App. 4th at 106 (emphasis in original); *see also Simmons v. Allstate Ins. Co.*, 92 Cal. App. 4th 1068, 1073 (2001) ("a SLAPP motion, like a summary judgment motion, *pierces* the pleadings and requires an evidentiary showing") (emphasis in original).

Counter-claimants have not demonstrated that their purported claims for common law injury to business relations or unjust enrichment are valid claims under California law. "[T]here is no cause of action in California for unjust enrichment." *Melchior v. New Line Productions, Inc.*, 106 Cal. App. 4th 779, 793 (2003). "Common law injury to business relations" is a form of damages, and is not an independent cause of action. Although it is their burden to show their claims are not meritless, Counter-claimants have not provided any authority demonstrating that either of these purported claims are valid ones under California law. Accordingly, the Court grants the motion to strike as to these two claims.

### C. Legal Standard on a Motion to Dismiss.

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. A motion to dismiss should not be granted unless it appears beyond a doubt that a plaintiff can show no set of facts supporting

9

his or her claim. *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). Thus, dismissal is proper "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spaulding,* 467 U.S. 69, 73 (1984). The complaint is construed in the light most favorable to the non-moving party and all material allegations in the complaint are taken to be true. *Sanders v. Kennedy,* 794 F.2d 478, 481 (9th Cir. 1986). The court, however, is not required to accept legal conclusions cast in the form of factual allegations, if those conclusions cannot reasonably be drawn from the facts alleged. *Cleggy v. Cult Awareness Network,* 18 F.3d 752, 754-55 (9th Cir. 1994) (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986)).

Documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss. Such consideration does not convert the motion to dismiss into a motion for summary judgment. *See Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994); *United States v. Ritchie*, 343 F.3d 903, 908 (9th Cir. 2003).

**D.     Sonoma Foods' Motion.**

Sonoma Foods moves to dismiss each of the counter-claims under Rule 12(b)(6) for failure to state a claim. With the exception of the tenth and eleventh counter-claims that the Court determined should be struck, the Court will address each claim in turn.

**1.     Breach of Contract.**

Sonoma Foods argues that Counter-claimants fail to allege sufficient facts to state all the required elements for their contract claim and that any such claim is time barred. At the hearing on Sonoma Foods' motions, Counter-claimants admitted that they pled this claim too broadly. According to Counter-Claimants' representation at the hearing, the contract at issue is a written contract between Peter Viviani and Sonoma Foods and is reflected in the minutes from the meeting on December 31, 2001. This agreement only expressly required the transfer of two trademarks, which were in fact transferred in 2002. Counter-claimants argued that this agreement also contained an implied agreement not to create or use any marks that would be confusingly similar to the two transferred marks. The Court hereby grants Counter-claimants

10

1  leave to amend their claim for breach of contract, but cautions them to be mindful that their
2  amended allegations must be consistent with their Counter-complaint. *See Reddy v. Litton*
3  *Industries, Inc.*, 912 F.2d 291, 296-97 (1990) (leave to amend may only be given to plead "other
4  facts consistent with the challenged pleading") (quoting *Schreiber Dist. Co. v. Serv-Well*
5  *Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).

6  Based on Counter-claimants' representations regarding their significant proposed
7  amendments and the Court's grant of leave to amend, the denies Sonoma Foods' motion as to
8  the breach of contract claim as moot. This ruling is without prejudice to Sonoma Foods'
9  moving to dismiss their counter-claim after it is amended.

10 **2.    Negligence.**

11 Sonoma Foods argues that Counter-claimants fail to allege any duty, a required element
12 of any negligence claim. In response, Counter-claimants argue that Somona Foods had a
13 "contractual duty to transfer certain rights." (Opp. to Mot. to Dismiss at 7.) "To be actionable,
14 a claim of negligence must be based on the existence of a legal duty to exercise due care."
15 *Keech v. Berkeley Unified School Dist.*, 162 Cal. App. 3d 464, 468 (1984). Whether the
16 requisite "duty of care" exists is a matter of law for the Court. *See Erlich v. Menezes*, 21 Cal.
17 4th 543, 558 (1999). In *Freeman & Mills, Inc. v. Belcher Oil Co.*, the California Supreme
18 Court made clear that tort recovery is precluded for non-insurance contractual breaches "in the
19 absence of violation of an independent duty arising from principles of tort law." *Freeman &*
20 *Mills, Inc. v. Belcher Oil Co.*, 11 Cal. 4th 85, 102 (1995) (internal quotes omitted). Here,
21 Counter-claimants have not plead any facts which would give rise to an independent duty
22 arising from principles of tort law. Accordingly, the Court grants Sonoma Foods' motion as to
23 this counter-claim.

24 **3.    Common Law Fraud.**

25 To state a claim for fraud, Counter-claimants must allege: (1) Sonoma Foods made a
26 false representation; (2) Sonoma Foods knew the representation was false; (3) Sonoma Foods
27 intended to induce Counter-claimants' reliance on the misrepresentation; (4) Counter-claimants
28 justifiably relied on the misrepresentation; and (5) Counter-claimants were damaged. *See, e.g.*

11

*Crocker-Citizens Nat'l Bank v. Control Metals Corp.*, 566 F.2d 631, 636-37 (9th Cir. 1977); *Engalla v. Permanente Medical Group*, 15 Cal. 4th 951, 974 (1997). Moreover, Counter-claimants must state with particularity the circumstances constituting fraud. *See Greebel v. FTP Software, Inc.*, 194 F.3d 185, 193 (9th Cir. 1999); Fed. R. Civ. P. 9(b). Upon review of the Counter-complaint, the Court finds that Counter-claimants fail to allege facts to establish the elements of their fraud claim with sufficient particularity. Accordingly, the Court grants the motion to dismiss as to this counter-claim.

### 4. Breach of Fiduciary Duty.

Sonoma Foods contends that Counter-claimants fail to allege any facts demonstrating a fiduciary relationship between any of the parties. The Court agrees. Counter-claimants have not plead any facts which would give rise to a fiduciary duty based upon a legal relationship between the parties. Nor have they plead any facts demonstrating that the alleged contract created a fiduciary relationship.

"[B]efore a person can be charged with a fiduciary obligation, he must either knowingly undertake to act on behalf and for the benefit of another, or must enter into a relationship which imposes that undertaking as a matter of law." *Committee On Children's Television, Inc. v. General Foods Corp.*, 35 Cal. 3d 197, 221 (1983). "Fiduciary relationships arise a matter of law in certain technical, legal relationships," including between "corporate officers and directors, on the one hand, and the corporation and its shareholders, on the other hand." *Oakland Raiders v. Nat'l Football League,* 131 Cal. App. 4th 621, 632 (2005). Although majority shareholders owe fiduciary duties to the corporation and its minority shareholders "to use their ability to control the corporation in a fair, just, and equitable manner," Counter-claimants have not provided any authority showing the opposite is true – that the corporation or its minority shareholders owe a fiduciary relationship to the majority shareholder. *See Oakland Raiders*, 131 Cal. App. 4th at 635 (quoting *Jones v. H. F. Ahmanson & Co.*, 1 Cal. 3d 93, 108 (1969). Nor, even more importantly, have Counter-claimants provided any authority to support their theory that a corporation owes a fiduciary duty to a former majority shareholder and to a separate corporation.

In *Oakland Raiders*, the court found that *Jones*, which held that majority shareholders owe fiduciary duties, was inapplicable for the proposition that an organization owes a fiduciary duty to its members. *Oakland Raiders*, 131 Cal. App. 4th at 635. The court noted that the fiduciary relationship recognized by the California Supreme Court in *Jones* was predicated on the inherent unfairness of majority shareholders using their dominant position to further their own interests at the expense of the minority shareholders. *Id*. Similarly here, Counter-Claimants have not any plead any facts which would demonstrate that Sonoma Foods was in a dominant position over Peter Viviani, its former majority shareholder, or to Sonoma Cheese Factory, the newly formed corporation.

Although parties may create fiduciary relationships by contract, "[m]ere contractual relationships, without more, do not give rise to fiduciary relationships." *Parrish v. Nat'l Football League Players Inc.*, 2007 WL 1624601, *4 (N.D. Cal. June 4, 2007) (citing *Oakland Raiders*, 131 Cal. App. 4th at 633-34.) "[C]ourts finding no fiduciary duty have done so where other legal duties clearly existed between the parties that covered the transaction in suit and were inconsistent with the existence of a fiduciary duty." *Id*. at 634; *see also Rita Medical Systems, Inc. v. Resect Medical, Inc.*, 2007 WL 161049, *6 (N.D. Cal. Jan. 7, 2007) (finding no fiduciary relationship where contract required defendant to keep plaintiff's trade secrets confidential, to assign patents, and not to compete with plaintiff because the contract covered all of the theories of breach of fiduciary duty asserted by plaintiff and did not give defendant any special status). "[A] fiduciary must give 'priority to the best interests of the beneficiary.'" *Oakland Raiders*, 131 Cal. App. 4th at 641 (quoting *Children's Television*, 35 Cal. 3d at 222). Counter-claimants have not any plead any facts that demonstrate Sonoma Foods agreed in the alleged contract at issue to undertake a fiduciary relationship and give priority to the interests of Peter Viviani and/or to Sonoma Cheese Factory. Accordingly, the Court grants Sonoma Foods' motion to dismiss as to the counter-claim for breach of fiduciary duty.

**5.    Constructive Fraud.**

To state a claim for constructive fraud under California law, Counter-claimants must "allege (1) a fiduciary or confidential relationship; (2) an act, omission or concealment

involving a breach of that duty; (3) reliance; and (4) resulting damage." *See Dealertrack, Inc. v. Huber*, 460 F. Supp. 2d 1177, 1183 (C.D. Cal. 2006). As discussed above, Counter-claimants have not alleged facts that demonstrate the existence of a fiduciary relationships. Nor have they alleged facts showing that a "confidential relationship" existed between Sonoma Foods and Peter Viviani and/or Sonoma Cheese Factory. Moreover, facts supporting a claim for constructive fraud must be alleged with particularity under Rule 9(b). *See Munday v. Real Estate Advisors, Inc.*, 1995 WL 549015, *2 (N.D. Cal. Sept. 12, 1995). Counter-claimants' complaint does not meet this heightened pleading standard. Therefore, the Court grants Sonoma Foods' motion as to the counter-claim for constructive fraud.

**6. Rescission.**

In light of the fact that the Court is giving Counter-claimants leave to amend their breach of contract counter-claim, the Court will similarly allow leave to amend their rescission counter-claim, which depends on the alleged breaches of the contract at issue. Likewise, the Court denies Sonoma Foods' motion as to the rescission claim as moot. This ruling is without prejudice to Sonoma Foods' moving to dismiss their counter-claim after it is amended.

**7. 15 U.S.C. § 1125(a).**

To state a claim under 15 U.S.C § 1125(a)(1), Counter-claimants must allege: (1) the existence of a valid, protectable mark used in connection with the sale of goods or services; and (2) Sonoma Foods' use of a mark that is confusingly similar. *See Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1046 (9th Cir.1999). At the hearing on the motion to dismiss, Counter-claimants conceded that this claim as currently plead does not allege these required elements. Accordingly, the Court grants Sonoma Foods' motion as to the counter-claim under 15 U.S.C. § 1125(a).

**8. False or Fraudulent Registration of Trademarks.**

Under this claim, Counter-claimants allege that Sonoma Foods made false or fraudulent declarations or representations to the United States Patent and Trademark Office in order to register trademarks that were promised to Sonoma Cheese Factory. (Counter-compl., ¶ 40.) As discussed above, Rule 9(b) requires that "in all averments of fraud or mistake, the

14

1  circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P.
2  9(b). Again, Counter-claimants fail to allege the circumstances of the alleged fraud with
3  sufficient particularity. Moreover, based on Counter-claimants representations at the hearing, it
4  appears as though they no longer contend that Sonoma Foods wrongfully registered trademarks.
5  Accordingly, the Court grants Sonoma Foods' motion to dismiss this claim.

### 9. Unfair Competition under Business & Professions Code § 17200.

To state a claim for unfair competition pursuant to California Business and Professions Code § 17200 ("Section 17200), a "plaintiff must establish that the practice is either unlawful (i.e., is forbidden by law), unfair (i.e., harm to victim outweighs any benefit) or fraudulent (i.e., is likely to deceive members of the public)." *Albillo v. Intermodal Container Services, Inc.*, 114 Cal. App. 4th 190, 206 (2003). Because the law is stated in the disjunctive, it contemplates three distinct categories of unfair competition and a plaintiff must plead the specific rubric under which the proscribed conduct falls. *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.,* 20 Cal. 4th 163, 180 (Cal. 1999). Moreover, the plaintiff bringing a claim based on the unlawful prong must identify the particular section of the statute that was allegedly violated, and must describe with reasonable particularity the facts supporting the violation. *See Brothers v. Hewlett-Packard Co.*, 2006 WL 3093685, *7 (N.D. Cal. Oct. 31, 2006) (citing *Khoury v. Maly's of California, Inc.,* 14 Cal. App. 4th 612, 619 (1993)).

In opposition to Sonoma Foods' motion to dismiss, Counter-claimants contend that Sonoma Foods' alleged acts were "unlawful," but do not specify any statute that they allege was violated. Therefore, the Court grants Sonoma Foods' motion to dismiss as to this counter-claim. The Court notes that if Counter-claimants elect to amend this claim, they should be mindful to allege facts that satisfy the standing requirement for claims under Section 17200. Proposition 64, which was approved by California voters on November 2, 2004, amended Section 17200 to limit the standing of private plaintiffs to bring such claims to those who "suffered injury in fact and [have] lost money as a result of such unfair competition." *Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1193 (S.D. Cal. 2005) (quoting Cal. Bus. & Prof. Code § 17204).

15

**10.     Financial Elder Abuse.**

Finally, Sonoma Foods' argues that Counter-claimants have not sufficiently alleged their claim for financial elder abuse. Financial elder abuse, as defined by statute, occurs when a person or entity "[t]akes, secrets, appropriates, or retains real or personal *property of an elder* ... to a wrongful use or intent to defraud, or both." Cal. Welf. & Inst. Code § 15610.30 (emphasis added). Counter-claimants allege that the Retail Trademarks became the property of Sonoma Cheese Factory pursuant to the alleged agreement and that Sonoma Foods failed to transfer such marks to Sonoma Cheese Factory. (Counter-compl., ¶¶ 10, 13.) Given that Counter-claimants allege Sonoma Foods failed to transfer these trademarks to a company, they have not alleged facts that state a claim for financial elder abuse, which requires that the property of an elder be wrongfully retained.[3] Accordingly, the grants Sonoma Foods' motion to dismiss as to this counter-claim.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Sonoma Foods' special motion to strike and GRANTS IN PART and GRANTS IN PART and DENIES IN PART Sonoma Foods' motion to dismiss as follows:

(1)     GRANTS the special motion to strike as to Counter-claimants' claim for common law injury to business reputation and unjust enrichment;

(2)     DENIES the special motion to strike as to the remaining counter-claims;

(3)     GRANTS the motion to dismiss with leave to amend as to Counter-claimants' claims for negligence, common law fraud, breach of fiduciary duty, constructive fraud, 15 U.S.C. § 1125(a), false or fraudulent registration of trademarks, unfair competition under Section 17200, and financial elder abuse; and

---

[3] Moreover, as discussed above, Counter-claimants represented at the hearing that they no longer contend that Sonoma Foods failed to transfer trademarks to Sonoma Cheese Factory required by the December 2001 Agreement. Therefore, it is not clear whether Counter-claimants still intend to pursue a claim for financial elder abuse.

16

(4)     DENIES the motions as MOOT on Counter-Claimants' claims for breach of contract and rescission. This ruling is without prejudice to Sonoma Foods' moving to dismiss these counter-claims after they are amended.

Counter-claimants shall file any amended counter-complaint within twenty days of the date of this Order. If Counter-claimants do not file an amended counter-complaint within twenty days, their entire Counter-complaint shall be dismissed. If an amended counter-complaint is filed, Sonoma Foods shall either file an answer or move to dismiss within twenty days of service of the amended counter-complaint.

**IT IS SO ORDERED.**

Dated: July 23, 2007

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE